UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MALINOWSKI, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WEXFORD HEALTH SOURCES, INC. et al., )<br>)<br>Defendants. )<br>) | Case No. 1:12-cv-08654<br><br>Judge Sara L. Ellis |

**MEMORANDUM IN SUPPORT OF MOTION TO SHOW CAUSE**

Two weeks ago, Plaintiff counsel learned they had wasted more than a year pursuing a line of discovery that was entirely unnecessary. This discovery was premised on Wexford having made a reasonably diligent search in response to Plaintiff's discovery requests, and on multiple representations Wexford made during discovery. In fact no reasonable search was made, and the representations were flatly false. The result has been acute prejudice to Mr. Malinowski and Plaintiff counsel both.

From the outset of discovery in June 2014, Plaintiff counsel has sought to understand why, after a UIC doctor requested a two-week follow-up to complete his lymphoma diagnosis, Mr. Malinowski instead languished at Stateville prison for months, with no care whatsoever. This delay is central to the case, and Plaintiff's discovery sought to understand whether Wexford ever contacted UIC to arrange the follow-up—and if not, who should have done so.

In response, Wexford claimed that no such communications existed, yet that the follow-up was being scheduled by UIC anyway. These and other assertions triggered multiple rounds of discovery to uncover any possible source of communications, and to understand how an appointment could have been arranged without Wexford contacting UIC to set it up.

It turns out that these assertions were false. All along, in fact, Wexford had responsive communications with UIC about the follow-up appointment. It simply hadn't bothered to look for them—even though Plaintiff counsel asked about such documents repeatedly—until August 2015, when Plaintiff requested the specific category of documents by name. Plaintiff counsel thus wasted months on pointless discovery, and now will have to conduct even more discovery that could have been completed long ago. And because Wexford's violations misdirected counsel for a year, Mr. Malinowski lost valuable time pursuing his claims. The sanctions

proposed herein are designed to bring a measure of relief the prejudice these violations have caused.

## Factual Background

As the Court will recall, Mr. Malinowski is an inmate at Stateville Correctional Center. This case involves a long delay in diagnosing and treating his lymphoma, which manifested in a fist-size tumor on his neck. Wexford, the private contractor responsible for Mr. Malinowski's care, knew about the fist-size mass at least by December 2011. (*See* Third Am. Compl. (ECF No. 150) at ¶ 16.) The standard of care is to presume that such a mass is lymphoma, to get a definitive diagnosis quickly, and to begin treatment within a few weeks of discovery. Because of multiple delays, however, it took Wexford more than six months to get the tumor diagnosed, and another three to start Mr. Malinowski's chemotherapy, in September 2012. (*Id.* at ¶ 16, 35, 44.)

One particularly troubling delay came relatively early in the case. On February 1, 2012, Mr. Malinowski received an outpatient diagnostic biopsy from an ear, nose & throat doctor ("ENT") at the University of Illinois at Chicago Medical Center ("UIC"). (*Id.* at ¶ 25.) The ENT sent a note back to Wexford's Stateville doctors asking for a follow-up appointment in two weeks, to complete the diagnosis. (*Id.* at ¶ 26.) Mr. Malinowski was never sent back to UIC, however, until May 8, 2012. During the months of delay, the tumor grew visibly larger, but even though Wexford's doctors saw Mr. Malinowski repeatedly, they made no effort to get him a follow-up appointment at UIC. (*Id.* at ¶¶ 27-35.)

Understanding how this lapse occurred has been critical to the case, both because it represents such a large portion of the total delay, and because it indicates a shocking level of indifference to Mr. Malinowski's condition. From the very outset, Plaintiff counsel sought

2

through discovery to understand how the delay occurred. As described below, this resulted in multiple rounds of discovery that took more than a year to conduct.

### A. June 13, 2014 Discovery

On June 13, 2014, at the very beginning of fact discovery, Plaintiff counsel served several discovery requests on Wexford. Even at this early stage, the focus of this discovery was on communications about the missing follow-up appointment. For example:

> RFP 5 asked Wexford to produce "All communications relating in any way to the allegations in Plaintiff's First Amended Complaint or Second Amended Complaint."
>
> RFP 11 asked Wexford to produce "All Documents reflecting communications between Wexford . . . and any outside medical provider between January 1, 2011 and the present regarding diagnosis or treatment of the condition described in . . . [a January 16, 2012 Wexford document describing Mr. Malinowski's neck mass]."

(Ex. 1.) The requests noted that "communication" was "used in its broadest sense and refers to any oral, written, electronic, video, photographic, or other means utilized to express an idea, thought, or information from, between, or among persons," (*id.*), which would capture any type of communication, and certainly communications with UIC about scheduling appointments.

Wexford responded to these requests stating that there were no such communications other than those "already produced" in the case—*i.e.*, Mr. Malinowski's medical records that had already been produced by the Illinois Department of Corrections ("IDOC") and several medical providers, none of which contained communications about the follow-up appointment (Ex. 2.)

Also on June 13, Plaintiff counsel served interrogatories to discover the source of delay. Interrogatory 5 asked Wexford to:

> Identify each and every Wexford employee or agent who had any responsibility (either total or partial) for providing or obtaining medical care for Plaintiff (including but not limited to persons with responsibility for securing diagnosis and treatment of the medical condition described in [a January 16, 2012 Wexford

3

> document describing Mr. Malinowski's neck mass]) throughout the time Plaintiff has been incarcerated at Stateville.

(Ex. 3.) It also asked Wexford to "identify each act the person undertook pursuant to those responsibilities" and any "writing or document that relates to each such act." (*Id.*)

After Wexford failed to provide meaningful responses to this interrogatory, Plaintiff counsel sought enforcement through the Court. At the November 4, 2014 enforcement hearing, Plaintiff counsel focused on the issue of identifying persons responsible for scheduling appointments with UIC, and the Court ordered Wexford to identify such persons:

> MR. WEIL: Judge, just so your order [for Wexford to respond further to Interrogatory 5] is clear, this request specifically goes to who is responsible for different aspects in Mr. Malinowski's care. The reason or one of the reasons this can't be satisfied through the medical records is because this case is largely about care that should have been provided but wasn't. . . . [T]hat would include things like *communications to UIC to arrange chemotherapy or a diagnosis for Mr. Malinowski.* That will never be found in the records because it didn't happen, or it was substantially delayed.
>
> THE COURT: [To Wexford counsel] So if he has someone who was acting as his primary care physician while at Stateville who was *responsible for coordinating referrals and everything else*, you need to identify who that person is and what the person's responsibilities were.

(Ex. 4 at 7:6-23 (emphasis supplied).) Following this order, Wexford supplemented its response to Interrogatory 5 on December 5, 2014, explaining that

> When an appointment with UIC is preceded through a collegial review with Wexford, the Wexford collegial review nurse will forward the appointment request to UIC, and UIC will then provide an appointment date.

(Ex. 5 at 5.) Wexford did not identify any documents associated with these communications.

### B. December 12, 2014 Discovery

Upon receiving Wexford's December 5 supplemental response, Plaintiff counsel sought to ensure they had requested any conceivable communication about the follow-up appointment. On December 12, Plaintiff served Interrogatory 15 on Wexford, asking it to:

4

> Identify each and every communication between December 1, 2011 and the present relating to the scheduling or arrangement of medical care (including diagnostic services) for Mr. Malinowski by an outside medical care provider. This includes communications (1) among your agents and employees; (2) communications between you and the [IDOC]; (3) communications between you and any outside medical care provider; and (4) communications between the [IDOC] and any outside medical care provider.

(Ex. 6.) The interrogatory also asked Wexford to identify any related documents. (*Id.*)

Wexford responded that it had identified no communications "other than those, which have previously been identified through discovery responses in this case." (Ex. 7.) In follow-up correspondence addressing this response, Plaintiff counsel focused specifically on the absence of any communications between Wexford and UIC regarding the February follow-up appointment:

> In response to Wexford Interrogatory 5, . . . your December 5 letter states that "[w]hen an appointment with UIC is preceded through a collegial review with Wexford, the Wexford collegial review nurse will forward the appointment request to UIC, and UIC will then provide an appointment date." . . . But none of defendants' discovery responses have ever identified who contacted UIC to set up this appointment, or when they did so. . . . [Interrogatory 15] seeks such information, and the defendants so far have failed to provide it.

(Ex. 8 at 7.)

On March 20, Wexford counsel responded, "We do not have any records containing communications between Wexford and [UIC] relative to [Mr. Malinowski's February 1] referral." (Ex. 9.) Wexford counsel then went on to assert that "because there were no such communications, the Plaintiff would already have been in the process of being scheduled by UIC for the subsequent appointment after the initial February [1] visit to UIC." (*Id.*)

## C. March 27, 2015 Discovery

This assertion set off yet another round of discovery in which Plaintiff counsel attempted to discover how Mr. Malinowski could have been "in the process of being scheduled" for the follow-up appointment without communication between Wexford and UIC to set it up.

5

On March 27, Plaintiff served Interrogatories 19 and 20 on Wexford, inquiring about the basis for Wexford's statement that Mr. Malinowski "was already in the process of being scheduled" without communication between Wexford and UIC, and whether Wexford contended that any other party was responsible for the delay in Mr. Malinowski's care. (*See* Ex. 10.) Plaintiff counsel also served document requests on Wexford, asking it to produce all electronic communications regarding Mr. Malinowski, all policy documents regarding referrals to UIC, and "all documents that track, organize, or record referrals from IDOC facilities to outside hospitals, including [UIC]." (*See* Ex. 11 at RFPs 3-5, 6, 8, 13.) This discovery was targeted at exhausting all possible routes by which a communication about the February 1 follow-up referral might have occurred, and at understanding how Wexford's referral system worked. Yet again, Wexford did not identify or produce any communications about the follow-up appointment.

### D. June 4, 2015 Discovery—Eleventh-Hour Production of Responsive Communications

It turns out that the entire line of discovery described above was a waste of time. In fact there had been communication between Wexford and UIC about the February 1 referral, and Wexford possessed the documents all along.

On June 4, 2015, Plaintiff counsel, in a further effort to understand how Wexford scheduled appointments at UIC, asked Wexford to produce several categories of documents described in the company's "Utilization Management" procedure manual, including documents called "U of I Daily Report[s]." (*See* Ex. 12 at RFP 8.) At the same time, Plaintiff counsel served a Rule 30(b)(6) deposition notice on Wexford, seeking among other things for testimony about Wexford's communications with UIC regarding Mr. Malinowski, and the basis of Wexford's response to Interrogatory 15. (Ex. 13.) In response Wexford produced several dozen

6

pages of documents on August 10 and 24, and on August 25 it provided Ms. Pat Casey, an employee who oversaw Wexford's communications with UIC, as a Rule 30(b)(6) witness.

During her deposition, Ms. Casey identified the "U of I Daily Report" documents in the August 2015 production. She explained that Wexford regularly transmits the U of I Daily Reports to UIC to communicate appointment requests. In fact, Ms. Casey testified, the Reports are *the* method by which Wexford communicates appointment requests to UIC. One of the reports indicated that on February 10, 2012, Wexford sent a U of I Daily Report to UIC requesting a two-week follow-up appointment for Mr. Malinowski. (Ex. 14 (arrows in exhibit supplied).) Ms. Casey confirmed (by referring to case tracking numbers) that this request referred to the follow-up appointment that had been requested by the UIC ENT on February 1. That communication, produced in August 2015, had been requested more than a year earlier.

## Argument

### A. Wexford Egregiously Violated its Discovery Obligations

#### a. Wexford violated its obligations under Fed. R. Civ. P. 26(g)

Parties responding to discovery have a responsibility to act competently, diligently, and ethically in discharging their obligations. That duty is enforced in part through Rule 26(g), which "imposes an affirmative duty to engage in pretrial discovery in a responsible manner consistent with Rules 26 through 37." Rule 26(g) Advisory Comm. Note (1983).

As relevant here, the Rule 26(g) requires that responses be signed by an attorney, which "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the response is complete and correct. Fed. R. Civ. P. 26(g)(1)(A). This certification requirement "provides a deterrent to . . . [the] evasion [of discovery] by . . . oblig[ing] each attorney to stop and think about the legitimacy of . . . a response" to a discovery

7

request.  Rule 26(g) Advisory Comm. Note (1983).  If a certification violates the rule without "substantial justification," sanctions must be imposed.  Fed. R. Civ. P. 26(g)(3).

Rule 26(g) thus "imposes a broad duty on counsel to make inquiry about the factual basis for discovery responses," 8A Wright & Miller, Fed. Prac. & Proc. § 2052, and the courts have been emphatic that discovery responses that are incomplete as the result of negligence or incompetence must be sanctioned under the rule.  *See id.* (collecting cases where courts found Rule 26(g) sanctions appropriate against parties that neglected to provide responsive discovery).

*In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F. Supp. 2d 1335 (N.D. Ga. 2012), for example, a recent leading decision that examined a party's Rule 26(g) obligations in detail, involved plaintiffs who had sued Delta over a baggage fee, and then sought discovery of all documents related to its decision to impose the fee.  846 F. Supp. 2d at 1338.  Delta produced numerous responsive documents, but because of miscommunication with its IT department and counsel's failure to look for backup tapes in its evidence locker, Delta failed to produce additional responsive documents until several months later.  *Id.* at 1342-43.   Delta argued that it should not be sanctioned because its failure was inadvertent.  *Id.* at 1348.  The court disagreed, finding counsel had not done enough to confirm that Delta's IT department had actually uploaded all responsive material to Delta's document review system, and that Delta could not be excused for its counsel's failure to inspect an evidence locker where backup tapes were stored (instead, counsel relied on assurances from Delta's IT department that there were no additional tapes).  *Id.* at 1357.  The failure was particularly glaring because plaintiffs had focused Delta's counsel on the issue of potentially missing documents, yet Delta's counsel did not conduct additional searches to ensure no documents were missing.  *Id.* at 1351.  For these reasons, sanctions under Rule 26(g) were appropriate.  *Id.*

8

In *Tec-Air Inc. v. Nippondenso Manufacturing USA Inc.*, No. 91-cv-4488, 1994 WL 747890 (N.D. Ill. Aug. 22, 1994), this Court reached a similar conclusion. There, as the result of a poorly-organized search for documents in a party's warehouse, the party's attorney incorrectly omitted several boxes of responsive documents from production. The Court held that Rule 26(g) sanctions were appropriate in light of the poorly-conducted search, particularly because the previously omitted documents "were found with little effort once it was decided to conduct a focused search for [the specific category of] documents" that had been omitted from the earlier response. *Id.* at *11. Numerous other courts have come to the same conclusion. *See, e.g., Legault v. Zambarano*, 105 F.3d 24, 28 (1st Cir. 1997) (upholding Rule 26(g) sanctions and noting, "[t]he [1983] Advisory Committee's Notes . . . spell out the obvious: a certifying lawyer must make 'a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.' Here, the trial court's finding that no such effort was made is well supported."); *R & R Sails Inc. v. Ins. Co. of State of Pa.*, 251 F.R.D. 520, 524-25 (S.D. Cal. 2008) (imposing Rule 26(g) sanctions where defendant without substantial justification belatedly produced responsive documents).

Wexford's failure to produce the U of I Daily Reports is, if anything, more troubling than the violations in *Tec-Air* and *In re Delta*. Wexford and its counsel plainly knew about the U of I Daily reports, and they knew where to look for them. In their December 5, 2014 letter, for example, Wexford counsel explained that "[w]hen an appointment with UIC is preceded through a collegial review with Wexford, the Wexford collegial review nurse *will forward the appointment request to UIC*". (Ex. 5 (emphasis added).) This described Wexford's process for sending U of I Daily Reports to UIC, and indeed, during discovery Plaintiff counsel brought this precise passage to Wexford counsel's attention, noting that it indicated a source of

9

communications from Wexford to UIC. (*See supra at* 5 and Ex. 8.) It would have been a simple matter for Wexford to ask the relevant employees whether there were any documents reflecting the communications it had described. For one, it could have asked Ms. Casey, who oversaw Wexford's communication of appointment requests to UIC—and who Wexford *designated* as its Rule 30(b)(6) witness on the subject.

Wexford apparently did none of this throughout more than a year of discovery, though. It was only when Plaintiff counsel requested the U of I Daily Reports by name that Wexford—with little effort, by all appearances—located and produced the reports, and with them the communications about the February 1 follow-up appointment.

The U of I Daily Reports have been in Wexford's possession throughout this litigation, and it is apparent that from the outset of fact discovery Wexford was either aware of them or could readily locate and review them if it so desired. The failure to locate and produce these documents through a year of discovery requests focused specifically on their existence is a bald and unjustifiable violation of Wexford and its counsel's discovery obligations under Rule 26(g).

### b. Wexford also violated its obligations under Fed. R. Civ. P. 37(c)(1)

For similar reasons, Wexford's failure to produce or identify the U of I Daily Report amounts to a violation of Rule 37(c)(1). Among other things, that rule provides for sanctions if a party violates its obligations under Rule 26(e) to supplement and correct its discovery responses in a timely manner if it learns that its responses are incomplete or incorrect, unless the failure to do so is substantially justified. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 856-57 (7th Cir. 2003) (discussing Rule 37(c)(1) sanctions for violations of Rule 26(e) obligations).

Rule 26(e) obliges parties to be conscientious in fulfilling their duty to supplement. As Wright & Miller put it, "courts look with disfavor on claims that counsel did not recognize that

important new items of information should be disclosed." 8A Fed. Prac. & Proc. Civ. § 2049.1. *In re Delta*, which also examined sanctions under Rule 37(c)(1), explained that a party violates Rule 26(e)(1)(A) when it is not "diligent in ensuring" that relevant documents are located or is "dilatory in determining the existence of" undisclosed responsive materials. *In re Delta*, 846 F. Supp. 2d at 1357.

In such circumstances, "Rule 26(e) does not provide [a party] a safe harbor for its lack of diligence," *id.* at 1357-58 (quotation omitted), nor does it "forgive [a party's] failure to timely conduct an adequate and complete search for responsive documents." *Id.* at 1357. This Court is in complete agreement with *In re Delta*'s approach. *See Recycling Sci. Int'l, Inc. v. Gencor Indus., Inc.*, No. 95-cv-4422, 1999 WL 160060, at *11 (N.D. Ill. Mar. 12, 1999) (striking a late supplementation to an interrogatory response as violating Rule 26(e) because "defendants did not show due diligence in searching for" responsive information in a timely manner).

Wexford did not conduct a reasonably diligent investigation to locate communications regarding the February 1 follow-up appointment. Wexford knew the communications occurred, and it knew who was responsible for them. It would have been a simple matter to locate the U of I Daily Report showing the communication, but Wexford made no effort to do this until the reports were requested by name. This failure, and Wexford's production of the communication more than a year after it was requested, violated Rule 26(e)(1)(A) without substantial justification. Sanctions are thus appropriate under Rule 37(c)(1).

**B. Mr. Malinowski and His Counsel Have Been Prejudiced by Wexford's Violations**

By failing to produce or identify the communication about the February 1 follow-up appointment, Wexford has seriously prejudiced both Mr. Malinowski and Plaintiff counsel.

11

*Mr. Malinowski.* The prejudice to Mr. Malinowski is severe. As an initial matter, Wexford's late production will now require additional, unanticipated discovery, which will delay resolution of the case and the achievement of the relief Mr. Malinowski is entitled to.

More importantly, though, Wexford's failure to produce or identify its communication to UIC, along with its repeated assertion that no such communication had occurred, misled Plaintiff counsel into believing that the three-month delay in scheduling the follow-up appointment was caused by Wexford's failure to communicate the request for a follow-up appointment with UIC. During the time that Wexford continued to mislead Plaintiff counsel, more than a year ran on the statute of limitations and other time bars to Mr. Malinowski's claims against UIC or any employees there. This may severely prejudice Mr. Malinowski if it turns out that UIC shares responsibility for the delay of his care.

*Plaintiff Counsel*. Wexford's discovery violations have caused Plaintiff counsel to waste large sums of time and money. This prejudice is acute. The U of I Daily Report was called for in Plaintiff's initial fact discovery, which was served in June 2014. Wexford's failure to produce or identify the documents, its repeated representation in response to additional discovery that no such communication existed, and then its false representation that the follow-up appointment was arranged *without* any such communication, caused Plaintiff counsel to engage in extensive discovery, for more than a year, to develop a thorough understanding the basis of these assertions, along with Wexford's procedures for arranging such care in the first place.

As described herein, that discovery occurred through multiple rounds of requests for production and interrogatories, along with often drawn-out efforts to enforce this discovery to gain useful information. That whole exercise, which took months and many hours of attorney time to carry out, was a complete waste of time. None of it would have been necessary had

Wexford timely identified and produced the U of I Daily Report, which was called for in multiple rounds of Plaintiff's discovery.

What is more, Wexford's late revelation will require a whole new round of discovery. Ms. Casey's deposition also revealed that upon sending the February 1 follow-up request to UIC, Wexford's internal appointment-tracking system erroneously recorded that the follow-up appointment had occurred, when in fact it hadn't. Plaintiff counsel could have investigated this error a year ago if the communication from Wexford to UIC had been timely disclosed. Now counsel will have to prosecute this entirely new area of discovery, having been misdirected by Wexford for more than a year. All of this will require expenditure of more money and time that Plaintiff counsel could spend on paying matters, but cannot because of Wexford's misconduct.

Plaintiff counsel take seriously the obligations that accompany admission to the bar, in particular their responsibility to represent vigorously indigent clients as appointed by the Court. That doesn't mean that their time and money should be abused by opposing parties, though. That is what happened here. Wexford's blatant violations of Rule 26(g) and 37(c)(1) sent Plaintiff counsel on an expensive goose chase that lasted more than a year.

### C. Sanctions Are Warranted for Wexford's Misconduct

As set for the above, Wexford's failure to produce or identify the U of I Daily reports violated Rule 26(g) and Rule 37(c)(1) without substantial justification, and did so in a manner that prejudiced both Mr. Malinowski and his attorneys. Sanctions are appropriate in this case.

Both rules provide broad authority for sanctions. Under Rule 26(g), sanctions are mandatory upon finding of a violation, and otherwise subject to the Court's discretion. *See* Advisory Comm. Note (1983) (describing Rule 26(g) sanctions as "mandatory," and noting that "[t]he nature of the sanction is a matter of judicial discretion"); 8B Wright & Miller, Fed. Prac.

13

& Proc. § 2284 (noting that under Rule 37, "[t]he district court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even"). Plaintiff respectfully submits that the following sanctions are appropriate here:

*Hold-harmless as to time bars against UIC*

The Court should issue an order for Wexford to hold Mr. Malinowski harmless for any running of the statue of limitations (and any other time bars) from July 24, 2014, when Wexford's responses to the initial discovery were served, until August 10, 2015, when it produced the U of I Daily Reports, for claims against UIC or its employees relating to scheduling of the February 1 follow-up appointment. This would include the expense of any litigation with UIC relating to such time bars. This would remedy the prejudice caused by Wexford's misleading representations that no communication to UIC existed regarding the follow-up.

*Extend Discovery*

Wexford's late revelation of the U of I Daily Report will require a whole new round of discovery surrounding the communication, including Wexford's policies for ensuring that requested appointments occur.[1] This discovery is antecedent to and will have to take place before depositions and discovery in other parts of the case. Plaintiff therefore requests that the discovery period, which is set to close on September 18, be extended, and that Plaintiff be granted leave to serve additional interrogatories and other necessary discovery on the defendants.

*Accelerate Discovery*

To address the delay caused by Wexford's misconduct, and reduce the prejudice of this additional delay on Mr. Malinowski, Plaintiff requests that the remainder of discovery be

---

[1] Among other things, Wexford has produced emails between itself and UIC discussing Mr. Malinowski's care. The emails begin in July 2012, and Wexford represented that its production was complete. The newly-revealed U of I Daily Report makes that assertion implausible. Plaintiff counsel will now pursue this line of discovery as well, which may result in a future motion to compel.

14

accelerated, by shortening the defendants' response-times for any interrogatories, requests for production, requests for admission, and deposition notices to 15 days.

### *Attorney fees and costs caused by the discovery violations*

Both Rule 26(g)(3) and Rule 37(c)(1) specifically provide that sanctions may include attorney fees and costs caused by violations of the rules, and this Court and others routinely order for payment of such attorney fees and costs. *See, e.g.*, *Tec-Air*, 1994 WL 747890, at *12 (N.D. Ill. Aug. 22, 1994) (ordering payment of attorney fees and costs incurred because of Rule 26(g) violation); *United Mo. Bank of K.C., N.A. v. Bank of N.Y.*, 723 F. Supp. 408, 415-16 (W.D. Mo. 1989) (sanctions include expenses incurred by plaintiff in conducting three unnecessary depositions prompted by defendant's improper discovery responses). Such sanctions are appropriate here. Plaintiff counsel proposes to submit for an itemized list of attorney fees and costs that were incurred as a result of the discovery violations described herein. In addition, Plaintiff counsel requests as a sanction payment of attorney fees and costs associated with this motion, including the time required to itemize attorney fees attributable to the violations.

Rule 26(g) and Rule 37(c)(1) provide that the court may order parties, their attorneys, or both may pay such sanctions. Plaintiff expresses no position regarding how the Court should allocate such responsibility.

### **Conclusion**

For the reasons set forth herein, Plaintiff requests that the Court issue an order to show cause why sanctions should not be issued in the manner proposed in this memorandum.

Dated:  September 11, 2015

 Respectfully submitted,

By:   <u>/s/ Stephen H. Weil</u>

Nathan P. Eimer
neimer@eimerstahl.com
Stephen H. Weil
sweil@eimerstahl.com
Eimer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Tel:  (312) 660-7600

*Attorneys for Plaintiff John Malinowski*

16

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 11, 2015, a true and correct copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                                                          /s/ Stephen H. Weil