# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN MALINOWSKI, | |
| Plaintiff, | |
| v. | Case Number  2012 CV 08654 |
| WEXFORD HEALTH SOURCES, INC., PARTHASARATHI GHOSH, M.D., IMHOTEP CARTER, M.D., ANTON DUBRICK, M.D., AND CONSTANTINE PETERS, M.D., et al., | Judge Sara L. Ellis, District Judge |
| Defendants. | |

## RESPONSE TO PLAINTIFF'S MOTION TO SHOW CAUSE

Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, Matthew H. Weller and Ronald E. Neroda of CASSIDAY SCHADE LLP, and for its Response to Plaintiff's Motion to Show Cause, hereby states as follows:

### I.  BACKGROUND/PLAINTIFF'S MOTION

1.      Presently at issue before this Court is the Plaintiff's Motion to Show Cause (see Doc. #172) accompanied by a 15-page Memorandum in support of the motion. (See Doc. #173). Throughout the course of discovery in this case, the Wexford Defendants have responded to weekly, and at time multiple daily, emails and calls from Plaintiff's counsel addressing and responding to discovery issues raised by the Plaintiff. This attention to the completion of discovery, along with the responses themselves (including thousands of pages of document production to date), makes it completely baffling to suggest that Wexford has not complied with its discovery obligations, or that any conduct by Wexford is improper, let alone sanctionable, as the Plaintiff now claims.

2.      By way of brief background, the Plaintiff has been an inmate at Stateville Correctional Center ("Stateville"), a maximum security facility, since November, 2006. He was admitted to a life sentence following convictions for Predatory Criminal Sexual Assault, Aggravated Kidnapping/Child<13/Retarded, and Child Pornography/Possession Film/Photos (See search results for inmate no. R57334 at https://www.illinois.gov/IDOC/OFFENDER/Pages/InmateSearch.aspx; see also http://articles.chicagotribune.com/2006-10-31/news/0610310297_1_maximum-sentence-john-malinowski-sexual-assault; http://articles.chicagotribune.com/2010-12-15/news/ct-met-child-abduct-offenders-20101215_1_abduction-john-malinowski-12-year-prison-sentence).

3.      Fast forwarding some years, in this case, the Plaintiff is claiming that his constitutional rights were violated when he was delayed medical evaluation and treatment for lymphoma in 2012. (See Plaintiff's Third Amended Complaint, Doc. #150). More specifically, the Plaintiff is claiming that he was harmed from an alleged delay in time from when he first reported a growth on his neck to the Stateville medical staff until he received a diagnosis and treatment for his condition. Following his diagnosis, the Plaintiff underwent a single course of chemotherapy at University of Illinois Chicago Medical Center ("UIC"), after which his lymphoma was found to be in remission, and has remained so since. (See deposition of Plaintiff's treating oncologist, Dr. David Peace, attached hereto as **Ex. "A,"** pp. 93, 97).

4.      While the Plaintiff has filed a lengthy memorandum in support of the pending motion, the main points of his position can be simply stated: the Plaintiff is claiming that because he did not earlier in this case receive documents known as Daily Activity Reports  from Wexford, Plaintiff's counsel wasted time on a "pointless line of discovery," that counsel will now need to conduct more discovery that could have been completed "long ago," and that

Wexford "misdirected counsel," for over a year such that the Plaintiff has lost valuable time in pursing his claims. (See Doc. #173).

5.       The Plaintiff claims that "none" of the extensive written discovery in which counsel has engaged would have been necessary had Wexford earlier produced the U of I Daily Reports. (See Doc. #173, pp. 13 – 14). The Plaintiff does not specifically point out which discovery he would have foregone had he received the report document at an earlier date. Certainly counsel would not have been inclined to abandon his claim against Wexford, so what discovery, exactly, would have been bypassed by Plaintiff's counsel is not stated, nor clear, from Plaintiff's motion. Furthermore, the Plaintiff is essentially claiming that the Daily Report is the key document, or some smoking gun, in this litigation. It is not.

6.       The Plaintiff's motivation behind the instant motion, however, is apparent. He is now concerned of the impact to his claim "if it turns out that UIC shares responsibility for the delay of his case." (See Doc. #173, p. 13). If in fact, Plaintiff's counsel is just now arriving at this possibility, it is of no fault of Wexford's and certainly not due to Wexford having supplemented its document production to include the Daily Activity Reports, which are the focus of Plaintiff's instant motion.

7.       Wexford has met its discovery obligations in this case (and continues to do so), but it is not the job of Wexford, or its counsel, to investigate or litigate this case for the Plaintiff.

## II.     SIGNIFICANT DISCOVERY COMPLETED

8.       In addition to the deposition of the Plaintiff's oncologist, Dr. Peace, Plaintiff's counsel has also taken the deposition of the Plaintiff's UIC treating otolaryngologist ("ENT"), Dr. Ari Rubenfeld. (See deposition of Dr. Ari Rubenfeld, attached hereto as **Ex. "B,"** pp. 7 - 8). At Dr. Rubenfeld's deposition, Plaintiff's counsel questioned the doctor directly about the very

matter which counsel is now claiming he was left in the dark about throughout the course of discovery in this case. (See **Ex. "B,"** pp. 33 – 35, 54 – 55, 113 - 114).

9.     Indeed, not only has Plaintiff had the benefit of the deposition testimony of two UIC treating physicians through which he could have investigated the matters which he now claims caused him "acute" prejudice (see Doc. #173, p. 13), Plaintiff has also subpoenaed numerous records from UIC. Moreover, Plaintiff had previously subpoenaed the deposition of Barbara Johnson, the scheduling liaison from UIC for the IDOC, however, for whatever reason, Plaintiff's counsel has not yet proceeded with that deposition.

10.    It is important to keep in mind what the Plaintiff's motion is all about. Simply stated, the Plaintiff is making the preposterous claim that but for these report documents, he had no idea of Wexford's stance in this case that UIC would need to supply the appointment dates for the Plaintiff during the time frame which the Plaintiff is claiming a delay in his diagnosis and/or treatment.

11.    Even if Plaintiff's counsel somehow was under the impression that a maximum security inmate could simply be sent out and simply arrive at UIC whenever a Stateville physician so desired, Wexford's position on this point has been apparent and at the forefront throughout this litigation, and was pointedly stated in Wexford's numerous responses to discovery. For example, Wexford previously produced a supplement to written discovery stating that "[f]or the periods of time raised in Plaintiff's counsel's February 5, 2015, letter, the Plaintiff was already under the care of and being treated by UIC physicians. Accordingly, UIC physicians/staff would be responsible for 'coordinating' his appointments at that time. **Once UIC would provide a date to Stateville, the IDOC would arrange for the transport of the Plaintiff for his offsite treatment."** (See **Ex. "C,"** emphasis added).

12.     This point was further expounded upon in other discovery responses from the Defendants, which explained, in no uncertain terms, "that Stateville was awaiting the ENT appointment from UIC." (See **Ex. "D"**). An additional supplemental response given by the Defendants following a request from Plaintiff's counsel also stated:

> **[T]he time that it took after February 1, 2012, for the Plaintiff to return for a subsequent appointment at UIC Medical Center was determined based on the scheduling and appointment time provided by UIC and the treater(s)/staff at that facility**, this response is based on Dr. Carter's knowledge and experience from his time working as the medical director at Stateville Correctional Center. The knowledge being that inmate-patient appointment dates with offsite medical providers at UIC are provided and scheduled by UIC. This information is known to Dr. Carter based on his experience with having numerous patients from Stateville who were sent out to UIC for specialist appointments during Dr. Carter's tenure as medical director at Stateville. Similarly, as to Wexford's response, the custom and practice relative to the provision of appointment dates at UIC is known to Wexford through its providers on site at Stateville, the use of UIC as an offsite facility for treatment of inmates, and based on the knowledge and experience of sending patients from Stateville to UIC for offsite care, treatment, and/or evaluation.

(See **Ex. "E,"** emphasis added).

13.     It is therefore apparent that Wexford has not been misleading Plaintiff or his counsel, as suggested in the instant motion. Nor has Wexford concealed the basis for its position or the involvement of UIC in the relevant time period in this case. The Plaintiff is asking this Court to ignore, as he seemingly has, the breadth of discovery accomplished in this case in favor of a sanctions order against Wexford based on a document whose impact upon this litigation is minimal at best, and which the Plaintiff has received while discovery is still ongoing and well before this case has been assigned a date for trial.

### III.     SANCTIONS CLAIM BY PLAINTIFF NOT SUPPORTED BY THE LAW

14.     None of the relief sought by the Plaintiff is supported by the law. First, the Plaintiff's reliance upon the cases *Tec-Air* and *In re Delta* is misplaced. The Plaintiff asserts that the claimed conduct by Wexford is "more troubling" than the violations founds in those two cases. (See Doc. #173, p. 10). Such an assertion is ludicrous. The Plaintiff claims that the UIC report documents at issue were wrongfully withheld. In fact, once those documents were requested, they were provided by Wexford. If there is a dispute as to whether those documents qualified as "communications" requested by the Plaintiff, or as to the timeliness of when they were produced, such a discovery dispute in no way amounts to sanctionable conduct.

15.     Taking a practical view of the issue now raised by the Plaintiff, it also makes no sense why, if the import of the document production is as the Plaintiff claims (i.e., indicating a potential claim against UIC) Wexford would withhold them, when they in fact support Wexford's defense of this case. As stated above, these documents were not withheld by Wexford, they were produced upon request, and there is absolutely no evidence here of willfulness, bad faith, or fault, by either Wexford or its counsel.

16.     Beyond sanctions, the further relief requested by the Plaintiff is, likewise, not justified. The Plaintiff is seeking some sort of Court order that Wexford should hold Plaintiff harmless for the running of the statute of limitations for a claim against UIC or its employees. The Plaintiff cites no legal precedent whatsoever for such a measure. Furthermore, and as stated in detail above, the Plaintiff through his own discovery, and that supplied by Wexford, has been well aware (or at least reasonably should have been expected to be) of UIC's involvement in the scheduling of the Plaintiff's appointments and medical care by the UIC providers.

17.     At this point, Wexford is in agreement that the fact discovery deadline in this case should be extended, but not to the degree or extent suggested by the Plaintiff. The Plaintiff should be permitted to depose the remaining individual Defendants and the remaining 30(b)(6) witnesses previously identified by Wexford. This can reasonably be accomplished in 60 days. Once the depositions have been completed, Wexford requests that this Court enter a briefing schedule for Defendants' forthcoming motions for summary judgment. There is no reasonable basis, however, for permitting the Plaintiff to engage in further written discovery with Wexford. If Plaintiff is permitted to issue even more written discovery to Wexford, there is no basis for any order shortening the permissible response time for Wexford.

## IV.     PROPORTIONALITY

18.     The course of discovery undertaken by the Plaintiff in this case has exceeded all reasonable bounds of proportionality under Federal Rule of Civil Procedure. Fed. R. Civ. P. 26(b)(2)(C)(iii). At some point, throughout the course of litigation, the burden and expense of discovery can outweigh any reasonable or likely benefit. (See *Lovelace v. McKenna*, 13-cv-4299 (N.D. Ill. June 29, 2015), Doc. #101). This case has reached that point.

19.     Going forward, in order to avoid the undue burden and delay of potentially unnecessary discovery, Plaintiff's claim against Wexford pursuant to *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978), should be bifurcated, and all discovery regarding said claim should be stayed until the Plaintiff's claims against the individual Defendants are resolved.

20.     Fed. R. Civ. P. 26(b)(2)(C)(iii) considers the proportionality of discovery in relation to a plaintiff's claims.  That Rule allows a court to, *sua sponte*, limit the frequency or extent of discovery if it determines that "the burden or expense of the proposed discovery

outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

21.     For example, the parties can be ordered to prioritize their efforts on discovery that is less expensive and burdensome. *Tamburo v. Dworkin*, No. 04 C 3317, 2010 U.S. Dist. LEXIS 121510, at *9-10 (N.D. Ill. Nov. 17, 2010); see also *Surles v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007) ("district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce…").

22.     In *Sommerfield v. City of Chicago*, 613 F. Supp. 2d 1004, 1017 (N.D. Ill. 2009), the court recognized that the application of the Rule involves a discretionary determination based upon an assessment of a number of competing considerations. *Id*. The process is similar to the discretionary balancing of harms involved in determining whether to grant injunctive relief, which is "not mathematical in nature," but rather "'is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations ….'" *Id. Citing Ty, Inc. v. The Jones Group, Inc*., 237 F.3d 891 (7th Cir. 2001).

23.     While Plaintiff will likely contend that the course of discovery completed by the parties to date would make it inappropriate to now enter a proportionality order, the Defendants have engaged in (and responded to) an extensive amount of written discovery, under the presumption that the Plaintiff would, at some point, accelerate this case toward actually taking the individual Defendants' depositions and reaching the merits of this lawsuit. Wexford has been compliant with the exhaustive rounds of written discovery requested by the Plaintiff, but there must be a reasonable conclusion to that phase of this action.

24.     Wexford has not included with this Response the exhaustive written discovery responses and thousands of pages of document production (and supplements to the same) accomplished to date. Upon request of this Court, however, and to aid in the management of further discovery going forward, Wexford will provide the Court with a detailed summary of all discovery completed to date, the significance of the same to the claims by Plaintiff, and, if necessary, all documents and records produced by Wexford and any non-parties, throughout the course of this case.

## V.     CONCLUSION

25.     Finally, it is difficult to not construe the Plaintiff's motion as a personal attack on the integrity and professionalism of counsel and the law firm representing Wexford. This motion goes far beyond simple discovery disputes or parties' differing positions on, for instance, legal objections to discovery. What's more, the Plaintiff has gone to these lengths without any reasonable basis and, as stated above, with a complete disregard for the whole of discovery completed to date in this case. While this case has been, admittedly, contentious as discovery has proceeded, the decision of counsel to bring the instant motion has taken this case to an unfortunate and wholly unnecessary nature of dispute.

26.     The Plaintiff's motion should be denied in its entirety. If, however, this Court is not inclined to deny the Plaintiff's motion at this stage, Defendants request, in the alternative, that this Court enter and continue the Motion, and withhold ruling, thereby allowing fact discovery to be completed and allowing for a complete factual background to be in the record of this case. Once fact discovery is completed, it will be even more apparent that there is no basis, at all, for granting the Plaintiff's motion to show cause.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC., prays this Honorable Court enter an Order denying the Plaintiff's Motion to Show Cause, and for any other relief that this Court deems just and appropriate.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: s/Ronald E. Neroda_____
    One of the Attorneys for Defendant,
    WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller - ARDC #6278685
Ronald E. Neroda - ARDC # 6297286
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
Telephone:    (312) 641-3100
Facsimile:    (312) 444-1669
Email: mweller@cassiday.com
Email: rneroda@cassiday.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2015, I electronically filed the foregoing Response with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

s/Ronald E. Neroda

8137028 RNERODA